## CENTRAL OF GEORGIA RAILWAY CO. v. WALLACE.

1. In the absence of a special contract, all that a passenger can require of a carrier is that due diligence be used, so that he shall not be delayed for an unreasonable time, and that when the journey has been once commenced the carrier shall exercise the same diligence in prosecuting the journey with reasonable dispatch according to the mode of conveyance and the particular circumstances of each case.

2. The damages alleged were not recoverable. Where a passenger has sustained no injury to his person or his purse, by receiving bodily hurt, or being subjected to insult, abuse, or humiliation, he can not recover for mental anguish arising solely from the circumstance that the railroad company may have failed to carry him to his destination within the published schedule time, and that by reason of the delay he failed to make a connection with the train of another railroad company, upon which he expected to continue his journey, although the carrier's agents were informed by the passenger, while en route, of the urgency of arriving at his destination in time to connect with the train of the other company.

NOVEMBER 15, 1913.

Action for damages. Before Judge Mathews. Houston superior court. October 8, 1912.

The action was by Mrs. Annie Wellons Wallace against the Central of Georgia Railway Company, to recover damages for delay in her transportation as a passenger from Perry to Macon, Georgia. She alleged that the railway company operated a branch line from Perry to Fort Valley, where connection was made with its line to Macon. The plaintiff's home was at Charleston, South Carolina, but at the time of the occurrence hereinafter narrated she was on a visit to her mother at Perry. She received communications from her brother, by telephone and telegraph, that her husband was seriously ill at Charleston, and immediately boarded the regular train of the defendant, accompanied by her four small children and her two sisters, purchasing tickets for transportation to Macon. There was some delay in leaving Perry, caused by the making up of the train; and being apprehensive of the failure of this train to make connection with defendant's train at Fort Valley, and her consequent inability to continue without long delay her journey on the Georgia Railroad from Macon if such connection was not made, she informed the conductor of defendant's train of her husband's illness and the necessity of her promptly reaching his bedside. The train left Perry fully ten minutes after the published schedule time, and en route to Fort Valley further time was lost at an intermediate station in taking on more cars, and because of

this delay the Perry train reached Fort Valley after the train for Macon had passed that point. She appealed to the yardmaster of the defendant at Fort Valley to cause her and companions to be transported to Macon in time to connect with the Georgia Railroad, which would convey her and them to Camak en route to Charleston. The yardmaster promised to do his best to comply with this request; but instead of sending the Perry train immediately to Macon, he allowed this train to be used in conveying a load of fruit-packers to a point on the defendant's road, and afterwards the plaintiff and her companions traveled on this train, reaching Macon at nine o'clock in the morning, about an hour after the departure of the train on the Georgia Railroad, and three hours after she left Perry. She was unable to continue her journey until four-thirty o'clock that afternoon, and reached her destination twenty hours late on account of the failure of defendant's train to connect at Fort Valley. She expended three dollars for the purchase of food for herself and companions at Macon, which was rendered necessary on account of the break in her journey. She was forced to remain in the ladies' waiting-room at Macon on a hot July day; the illness of her baby was aggravated by the delay; and she suffered great mental anguish because of her inability to go directly to her husband. The court overruled a general demurrer to the petition, and the defendant excepted.

*Ellis & Jordan,* for plaintiff in error.

*Guerry, Hall & Roberts* and *Nottingham & Nottingham,* contra.

EVANS, P. J. (After stating the facts.) A common carrier of passengers must use due diligence in safely conveying his passengers without unreasonable delay. The published schedules and time-tables of the carrier are public representations as to the time of departure and the period in which a journey may be made, and may be considered by the jury in determining whether proper diligence has been exercised. But published schedules are not an absolute assurance that any journey will be made within the advertised periods of time. In the absence of a special contract, all that a passenger can require of a carrier is that due diligence be used, so that he shall not be delayed for an unreasonable time, and that when the journey has been once commenced the carrier shall exercise the same diligence in prosecuting the journey with reasonable dispatch according to the mode of conveyance and the particular

circumstances of each case. 2 Hutchinson on Carriers, §§ 1103, 1104. The petition does not inform us whether the train which the plaintiff boarded at Perry was one run exclusively for the carriage of passengers or was a mixed train for the transportation of both goods and passengers. We infer from the allegations of the petition that it was of the latter kind. If it was such a train, then, in the absence of any allegation that the time lost in making up the train at stations and conveying the fruit-packers to a point on the defendant's line was unnecessary to the proper operation of a train of that kind, the plaintiff does not show actionable negligence.

But if we concede that the allegations respecting the delay of the train make a case of negligent delay, it is clear that the plaintiff is not entitled to recover the items of damage included in the petition. The special damage claimed is for the cost expended for a dinner at Macon. The petition does not allege that if she had proceeded on her journey without any delay in Macon she would have arrived at her destination for dinner, or that she would have paid less for the meals if partaken of elsewhere. The only other item of damages is that claimed for mental anguish occasioned by the delay in reaching her sick husband. There is no claim of physical injury or infringement of personal security or personal liberty. Damages are asked because of mental suffering disassociated from any injury to person or purse; and it is settled law in this State that mental suffering, distinct and separate from a physical injury, affords no basis for damages alleged to accrue from a negligent tort. *Chapman* v. *Western Union Telegraph Co.,* 88 *Ga.* 763 (15 S. E. 901, 17 L. R. A. 430, 30 Am. St. R. 183). As was said in *Sappington* v. *A. & W. P. R. Co.,* 127 *Ga.* 178, 181 (56 S. E. 311) : "Where one has sustained no injury to his person or his purse, by receiving bodily hurt or being subjected to insult, abuse, or humiliation, he can not recover for mental anguish or wounded feelings arising solely from the circumstance that he is negligently carried beyond his destination, although the agents of the railway company were informed of the urgency of his being allowed to there alight." We therefore think the petition failed to set out a cause of action.

*Judgment reversed. All the Justices concur.*